**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona State Building and Construction Trades Council,<br><br>    Plaintiff,<br><br>v.<br><br>Mark Brnovich, in his official capacity as Attorney General of Arizona,<br><br>    Defendant. | No. CV-20-01351-PHX-ROS<br><br>**ORDER** |

In 2017, Plaintiff Arizona State Building and Construction Trades Council filed suit claiming two provisions of Arizona law involving labor relations were preempted by federal law. (CV-17-4446). The Court dismissed that suit for lack of standing after concluding Plaintiff had not identified any "concrete and particularized injury" it had suffered, or was likely to suffer, as a result of the provisions. (CV-17-4446, Doc. 33). In 2020, Plaintiff filed the present suit, again seeking to challenge the two provisions of Arizona law. This time, however, Plaintiff attached to its complaint a letter from the Mayor of Flagstaff. In Plaintiff's view, that letter "explicitly" states one of the challenged statutory provisions "was the cause" for the City of Flagstaff not requiring a "project labor agreement" in connection with public works projects. (Doc. 13 at 3). That letter does not establish Plaintiff suffered, or will imminently suffer, a cognizable injury. Therefore, the complaint will be dismissed with leave to amend.

## BACKGROUND

Plaintiff describes itself as "an association of Arizona construction trade unions . . .

with a mission to provide and continue to grow an exceptional construction labor force." (Doc. 1 at 2). Plaintiff lobbies local governments regarding the type of labor agreements those governments should use in completing publicly funded projects, such as sewer and water treatment facilities. As part of its lobbying efforts, Plaintiff believes local governments should strive for "cooperative labor relations" by "using tools similar to Project Labor Agreements ('PLAs')." (Doc. 1 at 4). As alleged in the complaint, "[a] PLA is a collective bargaining agreement in the construction industry between multiple employers and employee groups that establishes uniform terms and conditions of employment, and . . . systematize[s] labor relations across a construction project." (Doc. 1 at 4-5).

Allegedly in response to Plaintiff's lobbying efforts, in 2011 Arizona enacted a law prohibiting state agencies or local governments from requiring PLAs in connection with contracts for public works. The new statutory provision stated, in relevant part,

> Agencies and political subdivisions of this state shall not require in any public works contracts that a contractor, subcontractor, material supplier, or carrier engaged in the construction, maintenance, repair or improvement of public works, negotiate, execute or otherwise become a party to any project labor agreement or other agreement with employees, employees' representatives or any labor organization as a condition of or a factor in bidding, negotiating, being awarded or performing work on a public works contract.

EMPLOYEES AND PUBLIC WORKS, 2011 Ariz. Legis. Serv. Ch. 23 (S.B. 1403).

When Arizona enacted this "anti-PLA provision" in 2011, Plaintiff's "efforts to have political subdivisions use PLAs were active and ongoing." (Doc. 1 at 5). Passage of the provision, however, "temporarily halted" Plaintiff's efforts. (Doc. 1 at 5).

After the change in Arizona law regarding PLAs, Plaintiff "began working with municipalities to encourage the use of highly skilled labor on publicly funded construction projects." (Doc. 1 at 6). As part of those efforts, Plaintiff recommended Arizona cities "adopt a Responsible Contractor Ordinance that would require any contractors performing work that is funded with the city's tax dollars to participate in a Department of Labor ('DOL') approved apprenticeship program." (Doc. 1 at 6-7). In response to those efforts,

in 2015 Arizona enacted a second statute aimed at frustrating Plaintiff's work.

The second statute added a new prohibition on state agencies or political subdivisions of the state from requiring that bidders for public works contracts "[p]articipate or contribute to an apprenticeship program that is registered with the United States department of labor." PUBLIC WORKS—EMPLOYEES, 2015 Ariz. Legis. Serv. Ch. 144 (S.B. 1090). Once this 2015 statute went into effect, Plaintiff stopped its lobbying efforts regarding apprenticeship programs. (Doc. 1 at 8).

In addition to these statutes regarding PLAs and apprenticeship programs, Arizona enacted two statutes allegedly meant to "[i]nsulate" state laws from challenges. (Doc. 1 at 8). First, Arizona enacted a statute that requires an award of attorneys' fees to the successful party in any suit brought by "a city, town or county" against the state or a "governmental officer acting in the officer's official capacity." A.R.S. § 12-348.01. Second, Arizona enacted a statute that gives "the State the ability to withhold shared revenues if a municipality . . . passed an ordinance in violation of state law." (Doc. 1 at 8). This second statute is triggered when "one or more members of the legislature" requests the Attorney General investigate whether a "ordinance, regulation, or other official action" by a local government "violates state law or the Constitution of Arizona." A.R.S. § 41-194.01(A). After investigating, the Attorney General must "make a written report finding either that the challenged action violates, may violate, or does not violate state law or the Arizona Constitution." *State ex rel. Brnovich v. City of Phoenix*, 468 P.3d 1200, 1204 (Ariz. 2020). If the Attorney General concludes the local government's action violates state law, the state treasurer must "withhold and redistribute state shared monies from the county, city or town." A.R.S. § 41-194.01(B)(1)(a). According to Plaintiff, the attorneys' fees statute and the "state shared monies" statute mean a local government risks "financial ruin" by acting contrary to state law. (Doc. 1 at 9).

In November 2017, Plaintiff filed its first lawsuit attempting to challenge the Arizona laws regarding PLAs and apprenticeship programs. (CV-17-4446). Plaintiff subsequently amended its complaint such that it alleged both state and federal claims

against Mark Brnovich in his official capacity as Attorney General of Arizona. (CV-17-4446, Doc. 16). In March 2019, the Court dismissed the state claims as barred by sovereign immunity and dismissed the federal claims with leave to amend. On the federal claims, the Court explained Plaintiff had "not alleged facts that any local entity desires or hopes to require PLAs or require participation in apprenticeship programs but is prohibited from doing so by the statutory changes." (CV-17-4446, Doc. 33 at 8). Absent such allegations, it was not clear the statutory changes had "resulted in any injury to anyone." (*Id.*). Thus, the federal claims were dismissed for lack of standing. The Court instructed Plaintiff that, if it chose to amend, it had to "identify the concrete injury it is likely to suffer" and allege facts establishing "that injury is not conjectural." (*Id.* at 10). Plaintiff did not amend and a judgment of dismissal without prejudice was entered in April 2019.

On January 15, 2020, Plaintiff sent a letter to the City of Flagstaff urging the city to require PLAs in upcoming public works projects. (Doc. 1 at 14). In March 2020, the Mayor of Flagstaff responded. The mayor's letter stated, in relevant part,

> I am in receipt of your January 15, 2020, letter . . . in which you urge the City of Flagstaff to require general contractors with whom the city directly contracts to use project labor agreements, including on Flagstaff's upcoming McAllister Pump House & Pipeline, Fort Tuthill Waterline, and all other projects.
>
> I have reviewed your description of project labor agreements ("PLA"). I understand that by putting all construction workers under one comprehensive agreement, one can enhance the timeliness and quality of construction projects. I agree with you that taxpayers benefit by the cost savings from such efficient project management.
>
> Unfortunately, as you note in your letter, under A.R.S. § 34-321, cities are prohibited from requiring "in any public works contract that a contractor … [n]egotiate, execute or otherwise become a party to any project labor agreement or other agreement with employees, employees' representatives or any labor organization." As such, the City of Flagstaff will not act contrary to state law by requiring general contractors on city projects using city funds to negotiate project labor agreements.

(Doc. 1 at 14). Plaintiff interprets this letter as an "explicit[]" statement by the Mayor of Flagstaff that the state law regarding PLAs "was the cause" of Flagstaff not requiring PLAs

on the projects identified in the letter. (Doc. 10 at 3).

Shortly after receiving the mayor's letter, Plaintiff filed the present suit. The sole defendant is "Mark Brnovich, in his official capacity as Attorney General of Arizona." The complaint alleges two federal claims: "Preemption Under the National Labor Relations Act" and "Preemption Under ERISA and the Fitzgerald Act." (Doc. 1 at 9-11). In brief, Plaintiff believes federal law preempts Arizona's statutes regarding PLAs and apprenticeship programs. Anticipating Defendant would again challenge Plaintiff's standing, Plaintiff referenced in its complaint, and attached as an exhibit, the letter it received from the Mayor of Flagstaff. The complaint identifies that letter as evidence of injuries Plaintiff has already suffered and also as evidence that Plaintiff is likely to suffer similar injuries absent relief.

Defendant seeks dismissal of the complaint "based on lack of subject matter jurisdiction and sovereign immunity." (Doc. 8 at 5). According to Defendant, Plaintiff still lacks standing because it has again failed to identify any "imminent and non-conjectural injury" caused by the state laws regarding PLAs and apprenticeship programs. (Doc. 8 at 6). In addition, Defendant believes it is not plausible an injunction against the Attorney General would redress or prevent Plaintiff's possible injury because the Attorney General does not have any direct enforcement powers under the challenged state laws. (Doc. 8 at 13). And because Plaintiff has not identified any past action by Defendant against Plaintiff, nor any contemplated action by Defendant against Plaintiff, Defendant argues he is immune from suit pursuant to principles of sovereign immunity. (Doc. 8 at 16).

## ANALYSIS

Plaintiff seeks only injunctive relief. (Doc. 1 at 12). To have standing "[t]o seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it

must be likely that a favorable judicial decision will prevent or redress the injury."[1] *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). As he did when seeking dismissal of Plaintiff's first suit, Defendant argues Plaintiff cannot meet any of these requirements. For present purposes, the Court need only address Plaintiff's failure to plausibly allege it is under imminent "threat of suffering 'injury in fact' that is concrete and particularized." *Id.* For purposes of the motion to dismiss, the parties' arguments have focused on the Arizona law regarding PLAs. The Court will do the same.

According to Plaintiff, it has "already suffered an injury in fact" and it is under the threat of suffering similar injuries absent relief. Plaintiff identifies the injury it already suffered as "it sought to enter into a PLA on projects in the City of Flagstaff, was rejected in that effort, and the rejection was explicitly due to the Arizona law enforced by the Arizona Attorney General." (Doc. 10 at 5). The problem for Plaintiff is that the letter it received from the Mayor of Flagstaff does not, in fact, establish the City of Flagstaff would like to require PLAs but it refused to do so because of the "anti-PLA" state law. Two aspects of the letter and Plaintiff's allegations illustrate this fact.

First, neither the letter nor the complaint establish the Mayor of Flagstaff "actually possesses legal authority on her own . . . to require PLAs." (Doc. 8 at 6). That is, there is no indication the Mayor of Flagstaff has the power to require PLAs. If the terms of contracts entered into by the City of Flagstaff are not under the control of the Mayor, the fact that the Mayor agrees with Plaintiff regarding the benefits of PLAs is immaterial. Because the Mayor may not have the power to require PLAs, there is no reasonable inference that the "anti-PLA" statute prevented an individual or entity with the power to require PLAs from imposing such a requirement.

Second, assuming the Mayor of Flagstaff has the power to unilaterally require PLAs, the letter does not state she would impose that requirement but for the "anti-PLA"

---

[1] Plaintiff relies on *Independent Living Center of Southern California, Inc. v. Shewry*, 543 F.3d 1050, 1062 (9th Cir. 2008) as allowing it to "seek injunctive relief under the Supremacy Clause." That case, however, "is no longer valid." *Exceptional Child Ctr., Inc. v. Armstrong*, 788 F.3d 991 (9th Cir. 2015). Plaintiff may have a plausible way to allege claims for relief under preemption principles but *Shewry* is not an appropriate basis for such claims.

- 6 -

law. The letter states "the City of Flagstaff will not act contrary to state law" by requiring PLAs. It does not, however, state that absent the "anti-PLA" law, the City of Flagstaff *would* require PLAs. With no such statement in the letter, and no other allegations showing an immediate intention by the City of Flagstaff or another local government to require PLAs, Plaintiff's alleged injury is entirely conjectural. *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (holding a threatened injury must be "*certainly impending*").

Because Plaintiff has not alleged the "anti-PLA" law has prevented any local government from requiring PLAs, the complaint must be dismissed with leave to amend. If Plaintiff chooses to amend, it must allege facts establishing a specific intention or desire by a local government to require PLAs that is being thwarted by the "anti-PLA" law. Once those facts are alleged, there remain substantial questions regarding traceability and redressability because it is not clear the Attorney General is the proper defendant. But the Court need not address those issues at present.[2]

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 8) is **GRANTED WITH LEAVE TO AMEND**. No later than **December 18, 2020**, Plaintiff may file an amended complaint. The Clerk of Court is directed to enter a judgment of dismissal without prejudice in the event no amended complaint is filed by that date.

Dated this 8th day of December, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge

---

[2] Moreover, to obtain relief regarding Arizona's law addressing apprenticeship programs, Plaintiff would need to allege facts establishing a local government's desire to require participation in apprenticeship programs that is being frustrated by Arizona law. *Cf. Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 746 (9th Cir. 2020) ("A plaintiff must demonstrate standing for each claim he or she seeks to press and for each form of relief sought.").

- 7 -